UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                      Case No. 11-CR-20540
                                                               HON. TERRENCE G. BERG

D-14 SRINIVAS REDDY,
    (a.k.a. "DR. REDDY"),

    Defendant.
_____/

**ORDER DENYING DEFENDANT SRINIVAS REDDY'S
RULE 29(c) MOTION FOR JUDGMENT OF ACQUITTAL**

On April 30, 2014, at the conclusion of a jury trial, Defendant Srinivas Reddy was found guilty of conspiracy to commit health care fraud in violation of 18 U.S.C. § 1349 (Count 1) and three substantive counts of health care fraud in violation of 18 U.S.C. § 1347 (Counts 4, 5 and 6). He now moves for a judgment of acquittal under Federal Rule of Criminal Procedure 29(c) (Dkt. 416). The government has responded to the motion (Dkt. 422), no reply has been made, and the matter is now ready for disposition.

The standard for deciding whether a motion for acquittal under Rule 29 should be granted is set out in *United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008). In *Conatser*, the Sixth Circuit explained that in reviewing a motion for judgment of acquittal under Fed. R. Crim. P. 29(c),

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

1

doubt.' *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In making this determination, 'we do not weigh the evidence, assess the credibility of the witnesses, or substitute our judgment for that of the jury.' *United States v. Wright,* 16 F.3d 1429, 1440 (6th Cir.1994). All reasonable inferences must be drawn in favor of the jury's verdict. *United States v. Salgado,* 250 F.3d 438, 446 (6th Cir.2001).

514 F.3d at 518.

Defendant claims that the evidence presented at trial was insufficient to permit a rational jury to find him guilty beyond a reasonable doubt, but Defendant's motion contains scant references to particular deficiencies in the testimony or the evidence, and instead relies upon generalizations and conclusory statements. It cites no legal authority other than Rule 29; at most quoting (without citation) the Fifth Circuit's recently-rejected "equipoise rule," a rule which nevertheless does not control in this Circuit. *See United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir. 2014) (en banc).

Regardless, the Court will address each of Defendant's specific arguments as to the sufficiency of the evidence in turn, with the discussion of these arguments separated into those that relate to the conspiracy count and those that relate to the substantive counts of heath care fraud, as appropriate.

## I. DISCUSSION

### A. *Defendant's Conspiracy-Related Claims*

Regarding Count 1, which charged Defendant with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, the Defendant's motion identified the following problems[1] with the evidence:

- "It was the testimony of the health care provider witnesses that Srinivas Reddy was never told what was permissible and not permissible, legal and illegal as to the rules and regulations of Medicare." (Dkt. 416 at ¶ 7.)

- "It was also clear that the conspiracy alleged in count 1 was ongoing long before Srinivas Reddy was hired." (Dkt. 416 at ¶ 8.)

- "It was never proven by the government that Srinivas Reddy joined the conspiracy and specifically if he joined, when the joinder occurred, therefore it was impossible for the jury to conclude when the government proved Srinivas Reddy became a member of the conspiracy and what his role in the conspiracy was." (Dkt. 416 at ¶ 12.)

- "Many witnesses testified as to various overt acts Srinivas Reddy did in furthermore [sic] of the conspiracy, but each witness' account was totally uncorroborated by other witnesses and often totally contradicted by each other." (Dkt. 416 at ¶ 13.)

In evaluating Defendant's claims, the Court notes that Defendant has not procured a full transcript of the multi-week trial, and consequently does not make reference any particular witness testimony or exhibits nor otherwise identifies any specific defects in the evidence. The Court therefore relies on its own recollection of the evidence, as well as the factual summaries in the parties' briefs.

---

[1] Some of Defendant's claims relating to the conspiracy count could also be directed at the substantive health care fraud counts, as they pertain to the weight of the evidence concerning knowledge and intent, which are elements of both crimes. The discussion below proceeds from the premise that these arguments were intended to apply all counts, such that the analysis is applicable to both the conspiracy conviction and the convictions for substantive health care fraud.

The Court will consider each of the Defendant's claims individually.

*1. Defendant Had Insufficient Knowledge of Medicare Regulations*

Regarding Defendant's claim that health care provider witnesses testified that "he was never told what was permissible and not permissible, legal and illegal as to the rules and regulations of Medicare," even if the Court assumes that this statement accurately characterizes the evidence, this would not be a sufficient basis to justify overturning the jury's verdict and granting an acquittal. The Defendant was not charged with violating a particular Medicare rule or regulation, and the government did not have the burden to prove that he had knowledge of "what was permissible and not permissible, legal and illegal" under those rules. As the jury instructions explained, it was sufficient to prove that the Defendant acted "with intent to defraud," which was further defined as acting "with an intent to deceive or cheat for the purpose of either causing a financial loss to another or bringing about a financial gain to oneself." (Court's Jury Instructions).

Based on the government's response and the Court's own recollection of the trial, the following is a summary of some of the evidence upon which a rational juror could rely in determining that Defendant Reddy acted with an intent to defraud: (a) Defendant was aware that Medicare was being billed based on his certifying medical records of beneficiaries; (b) Defendant knew he was not a licensed physician and was filling out both in-take forms and prescriptions for pain killers for patients, despite the fact these documents were pre-signed by other licensed physicians, and consequently were misleading; (c) Defendant knew that he was needed because the

4

licensed physicians would not take the time to see the patients and take down the necessary information on the forms necessary to bill Medicare; (d) Defendant did in fact hold himself out as a "doctor" to the beneficiaries although he was not in fact a licensed physician; (e) Witness Jawad Ahmad, Defendant's driver during his involvement in the scheme, "testified that Dr. Reddy was aware of the nature of his involvement," and that Defendant "understood that the individuals with whom he was meeting were looking to sell their Medicare information in exchange for prescription narcotics" (Dkt. 422, p. 6); (f) Defendant was the second-most highly paid person in the conspiracy, and "once sought a raise from Rahman [the leader of the conspiracy], arguing that he was the one who did the hard work of meeting with the beneficiaries and filling out paperwork to make the files look correct" (Dkt. 422, p. 9); (g) Defendant was aware both that the purpose of his examining the beneficiaries was to certify that they were "homebound" and in need of physical therapy and therefore eligible to be reimbursed for home health care treatment, and that the supposedly "homebound" patients came to see him at various residences, and traveled to get there; (h) Witness Ankit Patel testified that Defendant was present in the conference room of Quantum Health when fake patient records were being created and that he showed Defendant how to fill out a fake OASIS form; (i) "Ample evidence and multiple witnesses also proved that Reddy was aware of the key role he played in the conspiracy." (Dkt. 422, p. 9.)

The evidence presented during the trial was thus clearly sufficient to allow a rational jury to conclude that Defendant Reddy acted with the intent to defraud.

### 2. *The Conspiracy was Ongoing When Defendant was Hired*

Defendant's next claim relating to the conspiracy count is that "the conspiracy alleged in count 1 was ongoing long before Srinivas Reddy was hired." This may be factually true, but it does not support a motion for acquittal because it is legally irrelevant whether the conspiracy was in progress before Defendant was hired; the relevant question is whether a rational jury could conclude that the evidence was sufficient to show that the Defendant knowingly and intentionally joined the conspiracy at some time when it was in progress. *See United States v. Stephens*, 492 F.2d 1367, 1373 (6th Cir. 1974) ("[i]t is not necessary that each member of the conspiracy be a member of it from the beginning so long as each joins it while it is still in operation."). The jury instructions specifically advised, regarding the level of proof needed to show a defendant's "connection to the conspiracy," that "the government must prove that defendants knew the conspiracy's main purpose, and that they voluntarily joined it intending to help advance or achieve its goals;" however, "this does not require proof that the defendants knew everything about the conspiracy, or everyone else involved, *or that they were a member of it from the very beginning.* Nor does it require proof that the defendants played a major role in the conspiracy, or that their connection to it was substantial. A slight role or connection may be enough." (Court's Jury Instructions) (emphasis added). Accordingly, this ground does not support a motion for acquittal.

### 3. The Proof was Insufficient Concerning Whether Defendant Joined the Conspiracy and his Role in the Conspiracy

Defendant's third conspiracy-related claim is that "it was never proven by the government that Srinivas Reddy joined the conspiracy and specifically if he joined, when the joinder occurred, therefore it was impossible for the jury to conclude when the government proved Srinivas Reddy became a member of the conspiracy and what his role in the conspiracy was." This claim can be broken down into several points. First, as to the question of when a defendant joined a conspiracy, it is not necessary that the proofs answer that question with precision, as the above-quoted jury instruction makes plain. This element of Defendant's claim is without merit. The government must prove that the Defendant joined the conspiracy while it was in operation, and the evidence presented during the trial was clearly sufficient to allow the jury to conclude that the Defendant had joined the conspiracy at some point after he began working for Tausif Rahman and after he learned what was going on there. *See Conatser*, 514 F.3d 518 (quoting *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997) ("Once a conspiracy is established beyond a reasonable doubt, a particular defendant's connection to the conspiracy 'need only be slight.'")). As the government's response points out, "By May 2011, Reddy had worked for Rahman for over a year, seeing beneficiaries on behalf of real doctors. The jury could easily infer his intent based on his longstanding knowledge of the fact that he was facilitating fraud by posing as a physician to obtain Medicare information and fill in fake forms." (Dkt. 422, Govt.'s Resp. at 15.) All of the evidence itemized above in the discussion of Defendant's "intent to defraud" also supports the

conclusion that he was aware of the goals of the conspiracy and had joined it at some time prior to May 2011. *See* Dkt. 422 at 7-9. Defendant's third conspiracy-related claim is therefore not well-taken and does not support a motion for acquittal.

### 4. *Witness Accounts are Contradicted or Not Corroborated*

The fourth conspiracy-related claim raised by Defendant is that "[m]any witnesses testified as to various overt acts Srinivas Reddy did in furthermore [sic] of the conspiracy, but each witness' account was totally uncorroborated by other witnesses and often totally contradicted by each other." This claim cannot support a motion for acquittal because it lacks sufficient detail to allow the Court to evaluate what testimony was insufficiently corroborated or "totally contradicted." This alone supports denying this claim in its entirety. The government also correctly points out that even if witness testimony was uncorroborated or contradicted "as to various overt acts Srinivas Reddy did," such contradictions or lack of corroboration should not carry much weight because the government did not have the burden of proving that Defendant committed any overt acts in furtherance of a conspiracy under 18 U.S.C. § 1349; that statute does not have an overt act element. *See United States v. Beasley*, No. 12-20030, 2014 WL 1847406 at *2 (E.D. Mich. May 8, 2014) (Edmunds, J.)[2]

---

[2] The Court recognizes that the Sixth Circuit has decided cases suggesting in dicta that 18 U.S.C. § 1349 has an overt act element, but these cases appear to be relying on the law applicable to 18 U.S.C. § 371. *See United States v. Mahmud*, 541 F. App'x 630, 634 (6th Cir. 2013) (unpublished); *United States v. Myint*, 455 F. App'x 596, 601 (6th Cir. 2012) (unpublished); *United States v. Hunt*, 521 F.3d 636, 647 (6th Cir. 2008) (quoting *United States v. Crossley*, 224 F.3d 847, 856 (6th Cir. 2000)). Section 1349, unlike the general conspiracy provision of § 371, contains no express language requiring proof of the commission of an act to effect the object of the conspiracy. Therefore

Moreover, the government correctly points out that this type of challenge relates to weighing the quality of the evidence and sorting through any conflicts or discrepancies, which falls within the province of the jury. *United States v. Cecil*, 615 F.3d 678, 692 (6th Cir. 2010); *see also Tibbs v. Florida*, 457 U.S. 31, 45 n.21 (1982) ("The trier of fact, not the appellate court, holds the responsibility … fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." (internal citation and quotation marks omitted)); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) ("It is the province of the factfinder to weight the probative value of the evidence and resolve any conflicts in testimony."). Based on the evidence adduced at trial, a rational jury could have weighed and considered any contradictions among the witnesses or a lack of corroboration as to Defendant's overt acts, and nevertheless concluded that the evidence was sufficient to prove Defendant guilty beyond a reasonable doubt. This claim also does not support a motion for acquittal.

### B. The Claims Relating to the Substantive Heath Care Fraud Counts

Defendant makes a number of claims that appear to be addressed to Counts 4, 5, and 6, which charged him with executing a scheme to commit health care fraud, in violation of 18 U.S.C. § 1347. These charges arose from Defendant's visiting the house of cooperating witness Verdell Lovett on May 6, 2011, where

---

Defendant's claim of uncorroborated or contradictory evidence as to Defendant's overt acts is without consequence. However, even if the Sixth Circuit were to hold unequivocally that 18 U.S.C. § 1349 required proof of an overt act, it was clear from the evidence presented that (a) Defendant Reddy clearly committed numerous overt acts that were in furtherance of the conspiracy; and (b) whatever contradictions or failures of corroboration occurred in the accounts of the witnesses, they were not so significant as to prevent a rational jury from concluding beyond a reasonable doubt that the Defendant joined the conspiracy with an understanding of its purpose, and committed acts which furthered that purpose.

9

Defendant was videotaped meeting with three different beneficiaries, taking their information and medical histories, and filling out forms. The claims regarding these counts are as follows:

- "The jury was told by the co-conspirator witnesses that Srinivas Reddy was complete and accurate as to filling out the history portion of the patient's interview." (Dkt. 416, ¶ 9.)

- "[T]hat while Srinivas Reddy identified himself as Dr. Reddy, he never held himself out to be a licensed medical doctor, nor was Srinivas Reddy ever charged with practicing without a license." (Dkt. 416, ¶ 10.)

- "There was never testimony that Srinivas Reddy 'examined' patients in order to refer patients for home health care." (Dkt. 416, ¶ 11.)

- "[I]t was not proven that Srinivas Reddy had joined the conspiracy at the time of the three patients listed in the indictment and specifically what the government alleges Srinivas Reddy did on May 6, 2011 that violated counts 4, 5, and 6. (Dkt. 416, ¶ 14).

Having carefully considered Defendant's motion, the government's response, and the Court's own recollection of the evidence presented, the Court finds that none of the specified grounds are sufficient to support entry of a judgment of acquittal.

   *1. Defendant Filled Out Patient Histories Accurately*

Regarding the challenge to the sufficiency of the evidence for Counts 4, 5, and 6, the health care fraud that occurred on May 6, 2011, Defendant's first claim is that "the co-conspirator witnesses" told the jury "that Srinivas Reddy was complete and accurate as to filling out the history portion of the patient's interview." This argument seems to be suggesting that, if Defendant filled out the patient history

10

accurately, then he was not involved in a health care fraud scheme.  All of the evidence summarized previously in the discussion concerning the proof of Defendant's "intent to defraud" is relevant here and overcomes Defendant's claim.  Because the proof showed that, as of May 6, 2011, Defendant had been involved with Rahman's companies for more than a year and—according to witnesses such as Jawad Ahmad—had been assisting in the fraud scheme for some time, it does not undermine the sufficiency of the evidence to claim that Defendant was filling out patient histories accurately.  Ahmad, for example, testified to being present with Defendant in an elevator when a person asked them whether they "paid as well" as another recruiter.  Indeed, according the government's theory of the case, which the jury found to be correct, the scheme depended on using real patient names, and real patient backgrounds; the only falsified details were the characterization of the patient as "homebound," and the patient's supposed need for physical therapy.  This claim is not a sufficient basis to conclude that a rational jury could not have found Defendant guilty.

>    2. *Defendant Did Not Claim to Be Licensed as a Physician*

The second claim pertaining to the substantive counts is that Defendant "never held himself out to be a licensed medical doctor, nor . . . [was he] ever charged with practicing without a license."  This claim is not supported by the evidence because the patients who testified clearly were under the impression that they were seeing a physician, a medical doctor, who could prescribe pain medications.  Defendant called himself a doctor, and he wrote prescriptions for

11

patients which he then directed to be filled, all while knowing that they were pre-signed by another doctor who never examined the patients. Whether Defendant ever said the words, "I am a licensed medical doctor," or whether the authorities ever charged him with practicing without a license has no bearing on whether his conduct was misleading and fraudulent: it clearly was. Moreover, more than one witness testified that Defendant was aware that his role was crucial to the success of Rahman's operation, and that he consequently asked for a raise. The lack of proof that Defendant ever made the affirmatively false statement that he was a licensed physician is irrelevant to whether a rational jury could have found sufficient evidence to convict Defendant of health care fraud.

### 3. *The Evidence Did Not Show Defendant Examined Patients to Refer Them to Home Health Care*

According to Defendant's third claim relating to the substantive fraud counts, "There was never testimony that Srinivas Reddy 'examined' patients in order to refer patients for home health care." It is unclear precisely what this claim is intending to assert, whether the evidence was insufficient because it did not show Defendant "examined" patients; or whether it was lacking because Defendant believes it was necessary for the government to prove that Defendant examined patients *in order to refer them for home health care*. The Court need not linger long on this claim because there was ample evidence presented that the Defendant was aware that the purpose of Rahman's companies was to get patients to sign up for home health care and to then bill Medicare on the patients' behalf for physical therapy sessions. His role was not necessarily to "examine" the patients, but rather

12

to be the doctor who could fill out realistic intake forms that could be used to "refer" patients for home health care and physical therapy. As summarized above, the evidence showed that Defendant carried out this role with an intent to defraud. This claim is without merit.

>    *4. The Evidence Did Not Show Defendant Had Joined the Conspiracy by May 6, 2011; Or What Defendant Did That Constituted Health Care Fraud*

The fourth claim advanced by Defendant relating to the substantive fraud counts is that "[i]t was not proven that Srinivas Reddy had joined the conspiracy at the time of the three patients listed in the indictment and specifically what the government alleges Srinivas Reddy did on May 6, 2011 that violated counts 4, 5, and 6." Defendant offers no references to the testimony or evidence to support this claim, beyond asserting that it "was not proven." As a preliminary point, because counts 4, 5, and 6 are not conspiracy counts, it is not clear why Defendant maintains that to prove a violation of those counts, it had to be proven that Defendant had joined the conspiracy at the time he committed the substantive counts of health care fraud.

Nonetheless, conviction on the substantive health care fraud counts does require the government to prove "specifically . . .what [the Defendant] did on May 6, 2011 that violated counts 4, 5, and 6." Considering all the evidence that was presented however, the Court finds that a rational jury could have found Defendant guilty beyond a reasonable doubt on Counts 4, 5, and 6. The evidence at trial was that, as of May 6, 2011, Defendant had been working in the fraudulent scheme for

13

over a year.  Defendant's conduct on May 6, 2011 was viewed by the jury in the context of all the evidence it had heard regarding Defendant's prior involvement and knowledge of the scheme.  On that day Defendant visited the home of Verdell Lovett, a "recruiter" of Medicare beneficiaries whose job it was to round up people willing to sell their Medicare information for access to drugs and cash.  Defendant had visited Lovett's home in the past for this same purpose.  Defendant Reddy played his role by "seeing" the patients at Lovett's house, taking their histories, and filling out the form that would become the basis of the "referral" for home health care and for billing Medicare.  The proofs further showed that Defendant had carried out this same function for many other patients, on many previous occasions, prior to May 6, 2011.  Defendant had been present in the Quantum offices when fake records were being created and was allegedly shown how to fill out a particular form.  He was aware that the patients were on pain killers, and he repeatedly filled out pre-signed prescriptions so that they could continue to get these drugs, and completed in-take forms that were a prerequisite to the referral for non-existent home health care.  It was well within the bounds of rationality for a jury to conclude, in light of this evidence and all of the previously-discussed proof pertaining to Defendant's "intent to defraud," that Defendant was guilty of executing a scheme to defraud Medicare as alleged in Counts 4, 5, and 6.

## II. CONCLUSION

For all of the foregoing reasons, Defendants Motion for Judgment of Acquittal under Federal Rule of Criminal Procedure 29(c) is hereby **DENIED**.

**SO ORDERED**.


Dated: August 25, 2014                    s/Terrence G. Berg
                                          TERRENCE G. BERG
                                          UNITED STATES DISTRICT JUDGE


### Certificate of Service

I hereby certify that this Order was electronically submitted on August 25, 2014, using the CM/ECF system, which will send notification to all parties.

                                          s/A. Chubb
                                          Case Manager